Mr. Chief Justice, may it please the court and counsel, my name is Kim Crump. I represent Nader Abdallah, the respondent in this case. The first issue I would like to address is the issue regarding the failure of the district court to suppress the involuntary statement, the court's failure to reconsider the denial of his motion to suppress the statement after revelations of Special Agent Lewis's false statements, and the court's failure to require the production of emails. Once Nader Abdallah asserted his right to remain silent, the agents should have stopped and honored his assertion. It was clear error to suppress, to not suppress the statement. Following the mandates of Miranda, once warnings have been given and the individual prior to and during questioning states that he wishes to remain silent, interrogation must cease. Can I just ask you a question about his, I mean I guess the issue in this case is whether he unambiguously did invoke his right to silence. And this is just sort of a technical question. There are two different formulations floating around about what exactly your client said. The district court seems to have gone with your client saying, I am not going to say anything at all. But one of the officers testified that what he said was, I don't want to say anything at all. You're comfortable with the district court formulation? You think that we can all assume that what was said was I am not going to say anything at all? I believe that's what it was said, that I'm not going to say anything at all. So therefore after, in this case after, and this is in accordance with Inspector Sylvester's handwritten notes. He was the only agent at the time who was taking notes. The other three agents were either observed, other two agents were either observing or questioning. And his handwritten notes specifically indicated Miranda from DHS understood not going to say anything at all. It was clear that Nader Abdullah absurded his right to remain silent. And instead of honoring that right, Special Agent Lewis continued hounding him, alerting him of the arrest warrant process, search warrant, investigation, all of the information that they had against him and forced him to make a statement. We believe that in this particular case, the district court did not pay close attention to what was in the handwritten statement of Postal Inspector Sylvester, who was recording simultaneously with Mr. Nader's conversation with the agents. Special Agent Lewis eight days later composed a final typewritten statement utilizing Sylvester's notes and his memory to compose what happened. In his typewritten notes, he took a different spin on the events and said that Nader interrupted him when he advised him of his rights and he had to re-advise him. During the motion hearings, counsel questioned him, why didn't you give him a written waiver? His response was, I went with my gut feeling. Counsel again asked him, why didn't you give him a written waiver? What was the problem? The court also intervened and asked, why didn't you use a written form? And his response was again, I relied on my gut. And Nader Abdallah was talking so fast that he didn't want to stop the flow. Well, is there anything wrong with that? I don't understand. Isn't a police investigator entitled to sort of make that judgment? Look, I don't want to sort of ruin the moment by using a written waiver. I'm just going to get an oral. If that was in fact true, maybe, but in this particular case, as the judge indicated, the defendant should not be talking a mile a minute. It is the agent's responsibility to make sure that in advising him of his rights, the defendant understands that. You're saying he invoked his rights. I guess, let me ask my question in a slightly different way because I'm not sure I understand how your arguments fit together. Even if we work off exactly what the officer said happened in this case, you still think your client invoked his waiver is invalid, right? Yes. Okay. If that is right, just hypothetically, assuming that we're right, would that have any effect on counts 13 and 14 of this case, the false statement accounts? It may not have. I think there's a different issue with counts 13 and 14. I don't believe he addressed those per se in his statement. 13 and 14, I believe, deal with an issue of semantics and the cases that I argued indicate that if there is a statement that is arguably true, although it may appear to be incorrect, then there is a question about whether it is a false statement. Getting back to my argument on the involuntary statement, Special Agent Lewis insisted that Mr. Abdullah was talking too fast. And once the judge inquired and explained to him that at the time he's giving him his rights, he should not be talking. It is the agent's responsibility to make sure that he understands. So there should not be any talking. The agent should be asking him, does he understand certain rights, and getting a clear indication from the defendant that he does. Does any of that matter if a defendant invokes the right to remain silent? Once that happens, does any of it matter as to when it happened, whether or not he continues to talk or whatever? At that point, he's invoked the right to remain silent. I believe once he invokes that right, questioning should cease. Is there any question that he invoked the right here? He used words. He didn't say, I want to remain silent, I will not talk. But he used words that it appears that other cases have approved as being sufficient to do it. According to Sylvester's handwritten notes, he said, understood not going to say anything at all. So could the right to remain silent, does it have to be invoked in a custodial situation, or can it be done in a non-custodial situation? In case law, my impression is it needs to be done in custody, in a custodial situation. He was in custody. So you didn't read the Salinas case out of the Supreme Court? Justice Kennedy seems to think otherwise. That it can be outside of custody as well as in. In this case, I believe that notwithstanding the case the court cited, he was in custody, and he asserted his right to remain silent. And his assertion was ignored. But the point I'm trying to understand, because apparently the argument here seems to be the defendant is put in a custodial situation, he then invokes his right to remain silent, but the officer says he's in the middle of reading his rights, and he wants to keep reading the record. Does the record show how much he had read to him? The record is absent on that, and that's my point in the sense that the officers testified that they were about halfway through the rights. The officers testified to that effect. Why is that not significant to you? Because I think the first part of that says you have a right to remain silent. Anything you say can and will be used against you. It sounds like to me you probably have an argument at least that part was read, and if that part was read, and then he comes and says, I don't want to say anything, that seems to be, I'm going to take just what you just gave me. I don't need to hear the rest of it. Well, that could be the issue part of it. However, as my position, regardless of whether or not he got halfway through, and that's what the agent maintained, got to the point of saying you have a right to remain silent, and he said, I'm going to assert that, or if he completed the rights, it is our position that the investigator, Sylvester, was the only one taking notes, and when he was questioned during the motion hearing, can a defendant, you cannot determine whether or not a defendant has asserted his rights and understands it until after. I feel that you are arguing against your own case right now. I don't understand why you are arguing this. I thought you told me that on the face of this, based on the officer's testimony, he gets read his right to remain silent, then they tell him, if you say anything, we'll use it against you, and at that point, he says, I am not going to say anything at all, and that that is an unambiguous invocation of his right to silence. So why are we talking now about all of this other stuff? Because I feel like it's in some tension with the idea that this is an unambiguous invocation of his right to silence. In other words, if you follow that, there's no reason to talk about the interrogate, but to do it in the same context, if your argument is correct, that he invoked the right to remain silent, even if, I think even before, but middle way, at that point, he has that right, and you can't do this post-interrogation stuff. I would agree. I would agree. However, based on the testimony of what the officers were indicating, I was addressing their argument and government's counsel argument that because they didn't complete the rights, and he interrupted it, because the agent did not complete the rights. But I guess the point I'm trying to, you can address the argument, but you should probably present your argument in and they can make all the arguments they want, but if he invoked that right to remain silent, certain things have to be done at that point. And among those seems to be clear, you can't use post-interrogation type things to then come in and say he's waived it and done all this other stuff. I agree. It's clear that Mr. Abdullah asserted his right to remain silent, and it was not honored. My point being, and certainly it goes into superfluous information, and I would ask if I could continue, the credibility of what the court relied on was Special Agent Lewis' testimony and handwritten statement was called into question when the grand jury testimony was discovered. And it was noted in there that contrary to what he said during the motion hearing, he indicated that he had given Mr. Nader his rights and Mr. Nader, Abdullah, waived them orally and in writing, which indicates Special Agent Lewis lied during his testimony. In addition, during the grand jury hearing, the grand juror asked, well, did he understand the significance of his statement? And Special Agent Lewis' response was yes, but he started out slow. This is the motion to reconsider part of it that you're talking about. This is where you deal with credibility. Yes, sir. And he indicated that. You probably should let us just decide that on a brief. You know how that kind of goes. But the point being. Go ahead and argue if you want to. Is there is a credibility issue, and the court did not place enough reliance on the handwritten statement, which made it clear that Mr. Abdullah asserted his rights when he said, I understood. I'm not going to say anything at all. Counsel, may I just follow up with Judge Harris' question? And she asked, if you are correct on the motion suppressed because of the Miranda violation, what counts would be impacted by that? In other words, that doesn't solve all your problems, correct? It may not, but I think the majority of. I'm not I'm not downplaying that if it's one, that's fine. But I'm just saying, what about the conspiracy count? Well, it certainly would affect that, right? OK, because it's about spice, whether or not he knew that spice was illegal. And I think that was the most damaging part that it was alleged to have come out of that. You still maintain there was there to allow to restrict the testimony about his son knowledge or being told whether or not this is illegal, correct? Yes, sir. I couldn't understand this. Government put on a witness, his son. To do one thing, which was to read from paragraph seven or one paragraph and a seven page document that says I agreed to tell the truth. Am I right about that? And then you tried to cross examine and the court said, nope, you can't do that because beyond the scope, is that right? That's true. And you had a sidebar before they put that put the witness on, correct? I believe there was a sidebar with another counsel pertaining to an issue about their client's assertion of what a D.A. agent had said. You were a lawyer president sidebar. Yes, sir. Well, was there a motion to eliminate? I mean, how can you put a witness on just to say in a document, I agreed to tell the truth? Well, you swear before the court, everybody's going to tell the truth. The witness made no substantive testimony and you didn't object to that? Because then it seemed like you got that in and you couldn't go any further with it. Because you wanted to ask the son, isn't it true that no one people told you that this was legal and you understand that you never thought it was illegal? Remember that? Am I wrong about that? I believe there was an email that they used to get the son to testify with regards to, that was his email. And the email pertained to an allegation that the father and son had decided to change from the retail business of Spice to going into the wholesale. Son's testimony included that? Well, it was not his testimony, but when the government placed him on the stand, they gave him the email and he identified it. It came in through him? It came in through the son. In addition, they offered him... The judge told you you couldn't ask any questions because it had to be just limited to that? He actually didn't address it to me. It was to co-counsel. And it was limitations on the co-counsel's attempt to get in DEA agents who had apparently gone into the labs of their clients, Richie and Galecki, to say that what they were doing was proper. But in addition to getting in the email through the son, the government introduces plea agreement. And specifically in the plea agreement, it indicates that... What I'm talking about is one paragraph that said, I'll tell the truth. That's one paragraph. But another paragraph indicates that I'm pleading guilty because I am, in fact, guilty. Right. Put the whole thing in. Correct. Which is misleading. Over your objection, correct? It was over my objection. It is misleading to have a defendant say, I'm pleading guilty to a spice-related case. But then when counsel asked the question, isn't it true that you indicated that you and your father thought you were dealing with spice that was legal? When the court struck that, I believe that was error. I said that, yeah. I couldn't understand that, how you allow someone to say, you pled to but you can't put any evidence that they said or did something that was... They contradicted that plea. Never mind. Maybe the government can clear it up for us. Go ahead. Do you have anything further? With regards to the involuntary statement, I would submit to the court that certainly that error compromised the client's case. And I think it certainly was not a harmless error. Is the government even arguing harmless error? I'm sorry, ma'am? It doesn't matter unless the government. Sorry. It did not... The admission of the statement did not correct the harmless error analysis, which in the case of United States versus Giddens, it is indicated that when you're looking at harmless error, you have to look at whether or not the complaint of evidence that was admitted contributed to the conviction. In this case, we believe that that statement significantly contributed to Mr. Abdullah's conviction. Throughout the trial, there were several people who were co-conspirators who indicated notwithstanding their pleas, they thought Spice was legal. There was a lot of testimony throughout that indicated that Mr. Abdullah maintained that Spice was legal, his Spice. That in his store, he had it displayed on the wall. That even when he took it down, it was in a drawer with other items like batteries and employee, Ms. Myrtle Nugent, that his Spice was legal. And even when the agents questioned him and informed him that he was being arrested for Spice, he spontaneously said, Spice, why? Mike Mahone has a legal license to distribute it. Okay, so you're saying it's not harmless as to the three drug counts? Yes, ma'am. Okay, but it has nothing to do with the false statement accounts? There's no error at all, harmless or otherwise? Well, indirectly, because in the false statement allegation, there is an assertion that the money, the goal, the items that were seized from the government were items that were his legitimately and that he did not maintain his money and bank accounts, did not believe, not that he did not maintain. What does that have to do with the statement that came in? Well, indirectly, the government's case was built on the fact that he was dealing Spice and that his assets that they seized were directly related to the Spice. Right, right, but the... I believe that without the statement coming in, his count 13 and 14 charge would not be as clear. Certainly, the fact that his assertion... It should be clear. He says, I don't believe in bank accounts. And they've got him with a whole bunch of bank accounts conducting transactions that day. He indicated he didn't believe in maintaining his money and bank accounts. Where there is interest that occurs. I do understand the argument you're making, but what I don't understand is how it has literally anything to do with the content of the statement that was introduced, you say, in violation of Moran. It has indirect relationship. I think in the contents of how a jury would view it, it may have had indirect relationship, not direct.  And he allegedly admitted, I think, in contents, the jury could have looked at that false statement and felt that he was lying because he was dealing in Spice. So indirectly, I believe it had some relationship to counts 13 and 14. Thank you. Counsel, unless you're going to eat into your rebuttal time, you might want to put a bookmarker here. I will. Thank you. All right. Mr. Hudson. Yes, sir. Okay. Good morning. May it please the court. My name is Kevin Hudson, and along with my co-counsel, Eric Hurt, we are here today representing the government. So the defendant has raised four main issues in this appeal. I gather from the questioning of defense counsel that the Miranda issue is of particular interest to the court. So let me start there. First, there is no question that the defendant received a Miranda warning. In fact, he got a Miranda warning and a half since he interrupted the agent the first time around when the agent tried to give the warning. Is there any question that he invoked his right to remain silent? I do believe so, Your Honor. Yes, sir. And I would say that he did not invoke. I would point the court to three things for that proposition. Number one, the district court heard the evidence firsthand, determined it was not an invocation. So at least insofar as there are factual findings underpinning that, those factual findings are reviewed only for clear error. Number two. Was there a question, factual question, as to what he said to the officer? I don't really think there is much of a fact. Okay. Well, then that's a legal conclusion as to whether or not it amounted to right voluntariness, correct? Right. The application of the law to it, that's correct, is reviewed de novo, but I would just urge the court at least to assign some significance to the district court. That's how the district court looked at it. That's how the district court looked at it, having heard the evidence firsthand. But the words that he used, I don't know how the district court reached it, but the words that he used, there's a bunch of cases where the defendants have used those same kind of words. So what was the basis for, the legal basis for saying it's not invoked? Yes, Your Honor. Two further points then on that. Number one, I would submit to the court that a kind of a mid-Miranda retort is not an invocation. Am I... Slow up. Yes, sir. I don't know what a mid-Miranda retort is. Well, I would submit to the court that it's exactly what happened in this case. So the defendant... What's the difference between a retort and a statement? Because I have real questions about this. Your brief in the fact section says that he flippantly interjected. Where does flippantly come from? Somebody say that at the suppression hearing?  I believe it was Special Agent Lewis, Your Honor. And I find it in his testimony from the motions here or in here. I'm really, I'm confused by the distinction between retort, statement. You know, well, he just interrupted me there. I know it is. I'm pretty sure it is in Special Agent Lewis's testimony. It may even be on cross, Your Honor. Sure. I mean, you did cite two pages, but neither of them says flippant. Not anywhere where it says flippant. Yes. Yes, Your Honor. And you've got an interjection halfway through the Miranda warnings, but I don't see anything about flippant. You'll find it later. Yes, Your Honor. In any event, I would also urge the court just on the question, did he invoke yes or no? We can't look at the statement that he's not going to say anything at all in a vacuum. Rather, it should be looked at in the totality of the circumstances. If this defendant had said, I'm not going to say anything at all, and that was followed by a stony silence, we would certainly have a different case here. Doesn't Smith v. Illinois say the exact opposite, the Supreme Court, that you may not look at post-purported invocation events to cast doubt on the clarity of the police to keep pushing and keep pushing in the hopes that they could get something that would cast doubt on it? Well, and Your Honor, here, this really is not a case where the agents just kept pushing and pushing, and that was... So you're saying Smith v. Illinois, what, is no longer good law? It doesn't apply here? The government is not suggesting that, Your Honor. Rather, the government is simply suggesting that the totality of the circumstances... Well, I'm saying that Smith v. Illinois says you can't do that, that it says it is impermissible to look at statements made after a purported invocation in order to cast doubt on the clarity of that purported invocation. So I guess I'm saying I don't see how you square your argument with Smith v. Illinois. Well, I certainly understand the court's point, the government's... Understanding the point that the court is making, and certainly making no suggestion whatsoever that that's no longer good law, the government is pointing to some of the doesn't stand alone on this idea that the question for determining whether there was a Miranda invocation is, overall, what message was the defendant trying to convey? Right. At the time of the statement, not in light of things that happened afterwards. I totally agree with that. Let's look at what he might have been trying to convey when he said, I am not going to say anything at all. What else do you think he might have been trying to convey other than, I am not going to say anything at all? In other words, how is that ambiguous? Well, I think it's ambiguous given the circumstances that it's partway through the Miranda warning. There's no indication he... What if he said it before? Can a defendant invoke the right to remain silent before you even start reading rights? Your Honor, I cited one case in the government's brief. I think it was... Yes or no question? No, Your Honor. A defendant cannot walk in and says, I want to invoke my right to remain silent. And they said, no, you can't do that. I got to read your rights first. Is that what you think the law is? Your Honor, there was a case the government cited in its brief saying... Give it to me, because I want to see... I think it was McNeil v. Wisconsin. I think it was McNeil v. Wisconsin. Did you read the Salinas case out of Texas? I heard the court reference that case. No, the defendant didn't agree with you on that. Understood, Your Honor. If I may, because I've been addressing right now the question of, did an invocation happen, yes or no? I've got to stick with this question first, because if he invoked his right to remain silent, certain things happen. And that's the question of law here, as Judge Gregory has pointed out, because even though the district court might have felt differently, he used these specific words. There's a bunch of cases where a defendant didn't even use these words. And the court says, invoke the right. You say, well, he did it midway. Or if he had been stoned silent after. That's not in the case law anywhere. The case law clearly says a defendant has a right to remain silent. He doesn't have to wait until you give Miranda rights to do it. The Miranda rights is simply to inform him of the rights. But if he already knows them, he can go and says, I want to remain silent. I want counsel, right there. And if he does that, you don't need to read rights, because you're not going to get a waiver of rights at that point. He's already told you. I'm going to invoke them. Well, not to quibble with the court. If I may, what I was going to do next is assume for the sake of discussion without conceding the point, because as the court can tell, and I understand the court may disagree, the government doesn't believe there was an invocation here. That's a nice way of putting it. But you've got to deal directly with these. I understand you want to segue by assuming. There's nothing to assume here. There are times when I get to a point when you say assume, but you can't just assume he invoked his right to remain silent and says, well, assuming he did, then something else has happened. I assume that's where you're going. You want to assume he invoked his right to remain silent at this point and now move forward. For the sake of discussion, I don't concede that he did invoke his right to remain silent. But you haven't given me anything to indicate he did not. I'm not trying to argue with you. I'm simply saying everything here that he's done at this point is to invoke it. I want to hear something to tell me that he did not invoke the right to remain silent. And you don't get around it by saying, well, I'm quibbling with the court. You're not quibbling with the court. We're just saying this is all the record is saying. I want to hear something that says he did not. And I don't think there's a case out there that says they got to wait until it reads his rights to remain silent and all this. The purpose of Miranda is to ensure that the defendant understands his rights, that if he wants to waive them, he can do so. But if he walks in and says, I want to remain silent right now, I want my lawyer. Do you still have to read rights? Because why? Why are you going to read rights at that point? Now, if you have a break, this case law says, well, you wait till the next day or week, maybe a little while later, you might can come back and try to get a different thing. You can't do it in the same setting, can you? Well, I would submit to the court that there is nothing improper about law enforcement making sure that someone gets the full Miranda warning and also ensuring that a defendant knows why he or she has been arrested, apprising the defendant of the charge against them. I think it would almost be improper for the police just to slap the handcuffs on the defendant at that point. What's going to help the defendant once he says, I don't want to say anything? You know of a defense law, you then says, well, no, you need to go ahead and make sure he understands all his rights there. Your Honor, I think it is important for a defendant to understand their rights, regardless of one way. It surely is, but you don't represent the defendant. I agree with you on that. Understood, Your Honor. But I think it is important for the police to fully apprise a defendant of their... Why wouldn't it be important for them to respect his right to remain silent? Oh, I think they... Because if a defendant invokes the right to remain silent, isn't it important at that point to then respect that right? Absolutely, you have to. And then you just don't say anything more. How do you do that by asking express questions? How is that respecting the right? Well, so Your Honor, assuming for the sake of discussion that there is an invocation here and kind of moving on to this idea of did they honor his right to remain silent? I would submit to the court that they did. They gave him the full Miranda warning, which as I said, I think was entirely proper. They inform him of why he's under arrest. In response to his question, why, why am I under arrest? But even if he hadn't asked the question, there would be nothing... I thought what happened is... I could be wrong about this. I thought what happened is he says, I'm sorry, I'm not going to say anything at all. And they say, do you even know why you're under arrest? Right. That's an express question about the case. So how is that honoring his right not to answer questions? He just said, I'm not answering questions. And they come back with a question about the case. Because simply apprising him of what the charges are... They didn't simply apprise him. They asked him a question to see what he might say next. You're not allowed to do that. That's a question about the case. It's an express question about the case. There's a decent chance he answers by saying, I'm guessing it's because of the time I sold drugs. It's obviously possible that it will elicit incriminating information. But Your Honor, here it did not. That doesn't matter. The definition of interrogation is not whether it actually elicits incriminating information. Your Honor, they were just seeing if he knew what the charges were against him. I think they probably assumed he would say no. And I understand the court's point. And I'm not trying to be frustrating for the court here. But the government's point is that they apprised him of the charges against him, understood that the court's view is because they asked him a... When the issue is whether or not someone was interrogated, don't you think it's a big difference whether they asked him or told him? Because asking is interrogation. Telling isn't, arguably. Although I have some questions about confronting him with all of the evidence against him as well. Well, and Your Honor, that second part of it was also in response to a question he had, which was, why is my source of supply still out there? And they explained to him what they have between him and the source of supply. Both Miranda and Innes say specifically that interrogation includes confronting the witness with all of the evidence, I'm sorry, the suspect with all of the evidence against him in the hopes that he will start trying to explain it away. But Your Honor, here the government would submit that it was responsive to the question he asked. He asked the question, why is my source of supply out there? And they say, well, let me tell you what we know about you and the source of supply. Here's why your source of supply is still out there. I would have doubts about that argument, even if his question had been, will you please tell me all the evidence you have against me? But of course, he didn't say that. No, but he asked about his source of supply. And the agents answered that question. And by that point, he changes his mind. Well, he changes his mind because he says, he literally says, this is like a law school exam. You guys already know everything. So I guess I'll waive my rights. He actually says it. You guys know everything. This is off the record, on the record, I don't care. So when he waives his rights, he says, I'm sorry, purportedly waives his rights. He says, it's because of everything you just put in front of me. That's the whole point of Miranda. You're not allowed to dump all the information in front of them in the hopes that they'll give up and start talking. But the thing that's a complicating factor here, Your Honor, the government would submit, is that he asked them a question. If he had not asked them a question, if there had just been silence, then I think the way forward would be crystal clear. They can't ask him anything else. But that is assuming he invoked the first time around. And I'm not conceding that. It would be assuming that, assuming he invoked and assuming that you can then ask him an express question about the case without that counting as interrogation. Yes, Your Honor, because I don't think there is a significant difference in saying, do you know what you're charged with? And here is what you're charged with. It's going to lead to the same result, them apprising him of what he's charged with. No, it's not. And people, police officers do this. When you ask, do you know why you're here? Do you know why you're under arrest? There is a decent chance that someone is going to say something incriminating in trying to answer the question. Well, I guess I'm probably here because of that time I ran that lady over in my car. That's the hope. So, of course, there is a difference in asking and telling. Well, for the reasons I've outlined, I would respectfully disagree. Would the court like me to address harmlessness then? Did you put it in your brief? I did, Your Honor. Where is my brief? It is, let's see, it should be towards the end of Section 1 here. I think it's at the very end of Section 1. You put in that some of the stuff about the credibility and the failure to get the emails, that all of that was harmless. But did you argue that introduction of the statement was harmless? I believe we did, Your Honor. Well, I thought we had kind of just the other day, but maybe it was in another section. But maybe you didn't. So I was wondering whether it's too late to raise it now. Well, Your Honor, the government certainly did cite harmlessness in its brief, maybe not in a blanket fashion. But I wonder whether the court would allow me to address it now. Are there counts that would not be affected by this invocation of the right to main silence, suppression of his confession? Yes, there are, Your Honor. What counts would those be you maintain? The government would submit that the only count that would be affected were the statement suppressed would be the crack cocaine count. The other counts would not be, and that includes the spice counts. I think the court already kind of spoke with defense counsel about the false statement counts. What I'd like to focus on are the spice-related counts. Your Honors, there was a great deal of evidence of this defendant's skills apart from his statement. What is spice? I'm sorry to be kind of out of the loop here. Oh, I'm sorry, Your Honor. It's a synthetic cannabinoid. So it's inner plant material that's been sprayed with some chemical. There are a wide range of chemicals that are used to spray this plant material. Is it legal in the state of Virginia, as the defendant seemed to think, or not? So whether it is legal or illegal is a function of two things. Number one, has it been scheduled? If the answer is yes, then yes, it's illegal. No further question. State of Virginia, if you were in the state court right now, would it be illegal? So again, it depends on the chemical. Virginia... There are instances in which something called spice would be legal? That would depend on circumstances? In Virginia state court, they have very few. I'll say that because Virginia has a spice statute that is a lot wider than the federal statute. They refer to it as cannabimimetic agents, and they have a very wide definition of what counts as a cannabimimetic agent. In the federal system, it can either be scheduled or it could count under the Analog Act. That is, is it sufficiently analogous to another substance, both in its effects and in its actual chemical structure? But in any event, there was plenty of evidence that this defendant knew he was dealing with an illegal substance. We know, of course, from McFadden that that's one of the ways that the government can prove the mens rea component in a spice case is to prove that a defendant knew that he was dealing with a cannabimimetic agent. And what was the evidence that he knew? So, Your Honor, I would point the court to a couple of things. I have four. Actually, I think I have five points on that now. I used to have four, and then a moment ago, I came up with a fifth. Just give me the overwhelming evidence. Yes, sir. Yes, sir. I'll start with what I think is the best one. This defendant's gas station was searched by law enforcement in September of 2014. By December of 2014, he has pretty much the same operation, spice operation, back up and spice that the police seized from him at his gas station in 2014, excuse me, in September of 2014. So law enforcement has already shown up. He knows this stuff is subject to seizure. That's right out of McFadden as something that can be used to show that a defendant knew the substance was illegal. Point number two, at the gas station when he was selling it back in September of 14, he kept spice behind the counter and concealed from common view. And that's important. It's one thing to keep stuff behind the counter. It's quite another to keep it concealed from common view. In the record, one can find references to that at 224, 255, and 265. Further, there was evidence in the record at 899 to 900 that this defendant wrote a letter that the government put into evidence through Myrtle Nugent, the witness Myrtle Nugent, and it was a letter to law enforcement saying that the defendant is responsible for spice being sold at the business. Now, if the defendant doesn't think at a bare minimum that he's operating in a legal gray area, why would you write a letter like that specifically about that product? I see I'm out of time. May I give my two other points quickly? Well, go ahead. Go ahead. Thank you, Your Honor. Further, the evidence in the record comparing the testimony of Gerald Miller and Alan Ferguson was that this defendant did not report any of his spice income to his business tax preparer. Now, why do that? Why report your other income but not report your spice income if you think it's legal? Finally, and this was a question that one of Your Honors asked that made me think of this point, and it actually goes to the false statements, if this defendant thought that you have this money, why not simply say in the statement, look, you guys seized this from me, but it's legal, so give it back. I'm entitled to have it back, and that would have been a perfectly valid admin claim. But instead, he concocts this notion that, oh, I don't believe in banks. No need to do that if you think the product is legal. Just tell the police that. So those are my points for why the evidence was otherwise more than sufficient. I don't know if that prompts any further questions from the Court. I apologize for going over. The problem, of course, is the poison that it does to the fact finder. All those things you said very well. They're jury arguments. They're made to the founder of fact. But when you bring in these statements, you tip the scale. That's the whole idea of taint, and you didn't even argue a homicidal anyway. We're entertaining this, I guess, for some purpose of just fullness, allow you to do so, but you didn't even think it was so important to even argue it. So now you're saying this is so the piece de resistance, as the French would say, but yet you don't get to the point where it taints. Because this is, I mean, because Judge Wynn's question, that shows right there, you know, well, is it the state? Well, it depends on what it is. Basically, it's some kind of thing that's connected with marijuana because cannabis, right? It's not. It's not exactly your honor. It doesn't. So it doesn't get the Latin wrong about that. It's not. Oh, no, no, no. It's not even that your honor. Whereas marijuana is naturally occurring. This is not a naturally occurring synthetic, but it does something related to. No, it really doesn't. And that was the import of some of the testimony of the spice users that was offered. Who are the people selling these? Aren't they packaged like, like any other normal packages you see? They're not. They're not. They're not. They're handmade packages. They're there. I'm sorry, sir. They're handmade. Doesn't look like commercial package things. So what they look like, your honor, is that they usually come in these small mylar bags, usually by the gram, two gram, three gram, something to that effect. I mean, they're sold in illegal drug quantities and they're sold at illegal drug prices. There's also evidence of that in the record from the controlled buys that this stuff sells for $20, $30 per gram or two gram pack. The packs are completely opaque. They've got, you know, some kind of drawing on the front. Usually they say not for human consumption when, in fact, that's exactly why they're being sold. And so it is different. And the court, of course, has seen also from the record, the testimony of some of the users in this case, that the effects of synthetic cannabinoids on the user and the effects of marijuana on the user really are not comparable. No one's heard of a marijuana overdose. There are plenty of synthetic cannabinoid overdoses. It's very unpredictable and it ends up being a situation where the end user ends up being the guinea pig on this substance. This is a very dangerous substance. And indeed, I'm very sorry I've gone so far over on my time. No, I asked you the question. That's fine. Yes, your honor. Thank you, your honors. Thank you, your honors. Ms. Crump, you have reserved some time. Thank you, your honor. Your honor, I'd like to address the question about the evidence that was presented with regards to what Mr. Abdullah might have known. And throughout the testimony, I would believe that a good 85% of the people that testified who were sellers, users, indicated they did not believe that spice was an illegal drug. The court has asked, what is spice? It's one of those designer drugs. I would submit that one day we may hear about energy drinks being considered a drug because it has amphetamine in it. But it's a designer drug. And it appears that at the time it came on the street, people didn't know what it was. So what we had was an individual who owned a red barn market. There were people, nurses, doctors, folks from all walks of life who came in and bought Black Lotus, Green Goddess. He indicated to his employers multiple times, my spice is legal. It's legal. Even when his employee, Ms. Nugent, indicated, but I'm hearing about this. He says, no, the brand that I have is legal. Jason Mickle, who owned Hampton Pipe and Tobacco, indicated he thought his product was legal. He made it. His employee, Jake Fame, indicated, when I went out to sell the product, I told people it was legal. Mr. Mickle also said that when he talked to Sharif, the son, he said, Sharif asked him, is this legal? He said, yes. Mr. Baggs was one of the witnesses that the government called who apparently had used every drug under the sun. And he was from Gloucester.  He said, I thought it was legal. Ms. Cook, who was a nurse who worked for her son, I tried to elicit from her what she indicated. She pled guilty. Well, did you realize that the product that you were, your son was selling, was illegal? And she said, no. Well, she wasn't allowed to say no. But the grand jury transcript, which I later offered for purposes of appeal, indicated that she was not aware that Spice was illegal. With regards to Mr. Nader, the September 18th warrant arrest of his employees occurred. He was not there, but it is noted that the charges against Ms. Nugent were dismissed. So what did he know? He knew the charges were dismissed. He wasn't there. The government, you know, may think, well, he changed from retail to wholesale. Well, they took his gas station. And there was several references that there are other Spice products, but some of them are legal. And when I questioned his son, or attempted to, after his son pled guilty, I asked him, I said, do you remember our conversation after you pled? You wanted to talk to me. And I said that I had run across information where the government, Mr. Hurd, had said, there is legal Spice out there. And his response was, that's what we thought we were dealing with. So I would submit there was a lot of evidence that would show, not a guilty conscious, but one that was innocent in the thoughts that what I'm dealing with is legal. And then when he was approached by the agents, his first response was, after he said, we're arresting you for Spice, Spice? Mike Mahone, he has a legal license to deal with it, to deal it. Did he say he thought it was legal in Virginia, but not for the feds? He did not say that. The agent asked him, what was Mr. Mahone's commentary? And the response was, after September 18th raid, Mr. Mahone said, it's legal in the state, but not in the feds. That is not what Mr. Nader understood and thought as represented by Mr. Sylvester when he testified regarding Nader Abdullah's statement. And in addition, what the government said, the government said he knew was conflicting because if his first statement was, why are you bothering me because Mike Mahone has a legal license? That goes contrary to him knowing that it's illegal. What he was responding to was the agent's question about what did Mike Mahone say? There was no question about his understanding of what that meant. So we would submit that certainly looking at McFadden, there is no clear indication that Mr. Abdullah knowingly distributed an illegal substance. I would also note that Ms. Templeman, she was not a co-defendant, co-conspirator, but she was called to testify as a salesperson for the Galecki-Ritchie group that was selling spice nationally. When the government questioned her, they referred to it as potpourri. She made a half a million dollars. There's no implication whatsoever that she was guilty of selling spice. So I would submit to the court that the evidence was certainly not overwhelming, but the test here as far as harmless error is whether the involuntary confession that was admitted contributed to his conviction, and I would say it did because the government referenced and it's his closing argument that Mr. Abdullah knew, and that was incorrect. I would therefore ask that the court reverse the decision of the district court and remand this case back. Thank you. Do you want us to remand? Well, the alternative, I would like the court to dismiss it. Words are important at oral argument. I keep telling counsel. Well, certainly my preference would be to dismiss it. I'm out. Okay. All right. We'll come down to Greek counsel.
judges: Roger L. Gregory, James A. Wynn Jr., Pamela A. Harris